DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Oriana House, Inc. appeals the decision of the Summit County Court of Common Pleas, which affirmed an award of unemployment compensation to LaShawn Terrell after Oriana House terminated her employment. This court reverses.
 I.
On November 4, 1996, LaShawn Terrell began working as a residence supervisor at a halfway house for juvenile offenders operated by Oriana House, a nonprofit community corrections agency. In the morning of September 26, 1997, Terrell returned from escorting residents to school, and noticed that her personal car was missing from the Oriana House parking lot. She immediately called family members who had keys for the car, to see if one of them had taken the car. After learning that no family member had taken her car, she assumed that it had been stolen. One of her supervisors advised her to take the rest of the day off, with pay, to try to resolve the matter. She did so.
After making several phone calls, Terrell learned from the Akron police department that the car was on a repossession list. Although Terrell wanted to file a police report, the Akron police advised her that they do not take police reports on repossession actions. The police advised her to consult with her bank, if she believed that the repossession was in error. Terrell made several calls to the bank, and she was advised that if the car had been repossessed, it might be located in a Lorain county impound lot. The next day Terrell located the car at an impound lot in Oberlin. She later obtained a computer printout from the bank, which indicated that her car payments were up to date. Terrell did not inform her supervisors about the actual reason for the car's disappearance.
On October 16 and 17, 1997, Oriana's personnel coordinator Jodi Reinfeld called the Akron police department to see if Terrell's vehicle was ever reported as being stolen from Oriana House. The Akron police told Reinfeld that there was no record of such a stolen vehicle report. Reinfeld then contacted the Lorain police department, who told her the same thing. Another Oriana supervisor, Kathy Bala, found out that Terrell had not filled out an incident report about the car's disappearance, and she asked Terrell to do so by October 21.
Terrell completed an incident report on October 21. In that report, Terrell stated that she retrieved the car from the sheriff's department lot in Lorain, that the car was damaged, that the insurance company was going to pay for the car's replacement, and that she was advised that there was "a ring of car jackings happening on particular vehicles." The car did in fact have minor damage, but Terrell has since admitted that the other statements are untrue. Terrell did not mention the repossession in the incident report. On October 21, Bala and Reinfeld advised Terrell that they had already begun investigating the incident. They placed Terrell on administrative leave and gave her until October 24 to produce the police reports to corroborate her statement that she had reported the missing car to the police. Terrell told the supervisors that she would produce the documentation. On October 24, Terrell brought in the bank computer printout which verified that her car payments were current. She did not have any police reports, because none had been filed. Bala and Reinfeld refused to discuss the situation with Terrell because she had failed to produce the requested police reports. Oriana House terminated Terrell's employment on October 27, because of her dishonesty "and other related matters."[1]
Terrell filed for unemployment compensation. On December 31, 1997, the Ohio Bureau of Employment Services (OBES) awarded Terrell unemployment compensation, after it found that her discharge was without just cause, pursuant to R.C.4141.29(D)(2)(a). Oriana House filed an appeal, but after administrative reconsideration, the initial award was affirmed on February 17, 1998. Oriana House then filed a request for a hearing with the OBES Unemployment Compensation Review Commission, which was held on June 24, 1998.
Terrell and her mother testified at the hearing. Bala and Reinfeld testified on behalf of the employer. Terrell testified that her supervisor Anne Connell-Freund encouraged her to take off work the rest of the day of September 26, 1997, in order to investigate the whereabouts of her car. Several times Terrell told Connell-Freund that her mother could investigate the situation, but Connell-Freund insisted that she take off work. Once Terrell discovered the actual reason for the car's disappearance, she did not convey this information to her supervisors. Terrell offered no explanation for the event until Bala asked her to fill out the incident report. Terrell testified that Bala and Reinfeld refused to discuss the erroneous repossession when Terrell produced evidence of her car payments on October 24. Rather, because Terrell did not produce police reports, Bala and Reinfeld summarily fired Terrell.
Reinfeld testified that there were rumors among staff members that Terrell had told certain staff that the car had been repossessed. When questioned why it mattered whether they knew the reason for the car's disappearance, Bala testified that it did not matter whether the car was stolen or repossessed. Both Bala and Reinfeld maintained that the critical issue in discharging Terrell was the fact that Terrell had lied to them about the car. They maintained that Terrell's job involved working with juvenile offenders, and because rumors run rampant among the staff and between staff and the juvenile residents, any dishonesty by a staff member would affect the residents. Reinfeld also testified that security at the Oriana House lot was an issue that concerned staff and made recruiting new workers difficult. Reinfeld also asserted that Terrell had taken the day off work knowing that her car had not been stolen.
After the hearing, the Review Commission concluded that Oriana House had no policy that covered the instant situation. The Review Commission affirmed the earlier decision of the OBES Administrator, finding that although Terrell had been dishonest, "such dishonesty had no connection with the conduct of her duties" because she had lied about her personal car, which she did not use for work purposes. The Review Commission also found that because the dishonesty resulted in no harm to Oriana House, "there does not appear sufficient fault by the claimant in connection with her work to justify her discharge." Thus, as to the issue of unemployment compensation, the Review Commission concluded that Terrell had been discharged without just cause, and was therefore entitled to unemployment compensation.
Oriana House appealed to the Summit County Court of Common Pleas, which likewise affirmed the Review Commission's decision. The trial court concluded that although it may have decided the case differently, there were sufficient facts indicating that the dishonesty was not work related, so that "this Court cannot find that the decision of the Board was unlawful, unreasonable or against the manifest weight of the evidence."
Oriana House filed the instant appeal, assigning one error.
 II. The OBES Unemployment Compensation Review Commission's determination that Claimant was discharged without just cause should be reversed as unlawful, unreasonable, and/or against the manifest weight of the evidence where Claimant admitted to falsification of her employer's records and lying to her employer about an alleged theft of her vehicle from her employer's parking lot, which conduct should have disqualified her from unemployment compensation benefits as dishonesty in connection with work pursuant to Ohio Revised Code § 4141.29(D)(2)(f).
Oriana House states that the trial court erred in affirming the Review Commission's decision, because that decision was against the manifest weight of the evidence. Oriana House argues that Terrell's dishonesty was connected with her work duties, and that the dishonesty resulted in harm to Oriana House.
The Ohio Supreme Court has held that "[a]n appellate court may reverse the Unemployment Compensation Board of Review's `just cause' determination only if it is unlawful, unreasonable or against the manifest weight of the evidence." Tzangas, Plakas Mannos v. Ohio Bur. of Emp. Serv. (1995), 73 Ohio St.3d 694, paragraph one of the syllabus. The Court also held that an appellate court has "the duty to determine whether the board's decision is supported by the evidence in the record. This duty is shared by all reviewing courts, from the first level of review in the common pleas court, through the final appeal in this court." (Citations omitted.) Id. at 696, citing Irvine v. Unemp. Comp.Bd. of Rev. (1985), 19 Ohio St.3d 15, 17-19.
The Ohio Supreme Court had commented that the Unemployment Compensation Act "does not exist to protect employees from themselves, but to protect them from economic forces over which they have no control. When an employee is at fault, he is no longer the victim of fortune's whims, but is instead directly responsible for his own predicament." Tzangas,73 Ohio St.3d at 697-698.
Thus, the statute provides that no individual may receive unemployment compensation if the OBES administrator determines that the individual "became unemployed because of dishonesty in connection with the individual's most recent or any base period work." R.C. 4141.29(D)(2)(f). The statute defines dishonesty for purposes of this division as "the commission of substantive theft, fraud, or deceitful acts." Id. An individual will also be denied unemployment compensation if the administrator determines that the individual has been discharged for just cause. R.C.4141.29(D)(2)(a). According to the Supreme Court, just cause exists when an act is done for a reason that an "ordinarily intelligent person" would find to be a justifiable reason for doing the act. Irvine, 19 Ohio St.3d at 17, quoting Peyton v. SunTV (1975), 44 Ohio App.2d 10, 12. The Supreme Court has held that a just cause determination is appropriate only if there is fault on the part of the employee. Tzangas, 73 Ohio St.3d at paragraph two of syllabus. Where an employee exhibits "`unreasonable disregard for [the] employer's best interests,'" it is appropriate to find that there was employee fault, and that the discharge was for just cause. Kiikka v. Ohio Bur. of Emp. Services (1985),21 Ohio App.3d 168, 169, quoting Stephens v. Bd. of Rev. (May 22, 1980), Cuyahoga App. No. 41369, unreported, at 3. When an individual applies for unemployment compensation, the burden of proof is on the individual to establish that he was discharged without just cause. Irvine, 19 Ohio St.3d at 17.
When Oriana House discharged Terrell, it stated that she was being discharged because of her dishonesty and "other related matters." Terrell thus had the burden to prove that she had been discharged without just cause. At the review hearing, Oriana House offered three reasons why OBES should find that Terrell was discharged with just cause: (1) Terrell took time off with pay knowing that her car had been repossessed, thus unjustly depriving Oriana House of that income; (2) Terrell's dishonesty impacted her work duties, because, as a supervisor of juvenile offenders, Terrell needed to be trustworthy and to set a good example for the residents of the halfway house; and (3) because of concerns of staff members and prospective employees about security in the parking lot, Oriana House had a valid interest in determining whether Terrell's car had been stolen or repossessed.
Oriana House first asserts that Terrell knew that her car had not been stolen when she took off work on September 26, and that this constituted "theft" of Oriana's resources. However, the evidence established that Terrell did not know the circumstances of her car's disappearance on September 26. Furthermore, the evidence was uncontroverted that Terrell's car had been illegally repossessed. Bala and Reinfeld testified that they gave Terrell paid leave to deal with the car situation because they felt that Oriana House was somewhat responsible for the "theft" of the car. However, the evidence established that Connell-Freund was the person who gave Terrell permission to take off work, and that the supervisor virtually insisted that Terrell take off, even though Terrell advised her that her mother could investigate the situation. Bala and Reinfeld testified that they would not have given Terrell paid leave if they had known at the time that the car had been repossessed. However, that was not the circumstance at the time Terrell was given time off. Although this court does not condone Terrell's dishonesty after the fact, there was competent credible evidence to support the conclusion that Terrell was given time off to locate her vehicle, and she did just that.
However, as to the connection between Terrell's dishonesty and her work duties, the Review Commission's finding that Terrell's dishonesty "had no connection with the conduct of her duties" is against the manifest weight of the evidence. The evidence supports the opposite conclusion, that Terrell was discharged because of "substantive * * * deceitful acts" in connection with her work. R.C. 4141.29(D)(2)(f). The Review Commission found that, because the subject matter at issue was Terrell's personal car, which she did not use for work purposes, her deception was not work-related. The Review Commission also concluded that Terrell lied about the repossession because she was embarrassed about it. However, the evidence does not support these conclusions.
Bala and Reinfeld both testified that a supervisor who works with juvenile offenders acts as a role model and must exhibit integrity. Terrell failed to say anything about the car's disappearance for over three weeks after the event. By the time she was asked to complete an incident report, she had investigated the matter, and had resolved the problem. Yet she still decided to lie to her employers about the incident, suggesting premeditation. Furthermore, Terrell never stated that she lied about the car because she was embarrassed about the erroneous repossession.
Finally, Oriana House claims that it had a legitimate interest in knowing whether the security of its property was breached when Terrell's car was taken. Consequently, it suffered harm when Terrell lied about the car. Reinfeld testified that Oriana House had difficulty keeping and recruiting employees because of parking lot security issues due to the facility's location. Terrell countered that Oriana's employees quit because of the difficulties involved in working with the juvenile residents of the halfway house. However, even if Terrell's statement is true, this does not eliminate the security issue as a factor affecting the ability of Oriana House to secure and retain personnel. Terrell herself testified that staff members were quite concerned about incidents of vandalism and theft of cars in the Oriana lot, and that a special meeting was held to deal with this very issue only a few weeks before her car was taken. Nonetheless, she continued to lie about her car's disappearance, and implied that her car was stolen in connection with a "ring of car jackings," thus leaving her supervisors and her coworkers with the misapprehension that their cars were at risk.
The Review Commission found that Terrell admittedly lied about the disappearance of a car from the Oriana lot, which Terrell admitted was a matter of great concern to the Oriana Staff. Yet the Commission concluded that the deception had no connection with her work duties, and that Oriana House suffered no harm because of Terrell's dishonesty. This court finds that the Review Commission's determination that Terrell's dishonesty was not work-related is not supported by competent credible evidence. Terrell was not entitled to unemployment compensation because she became unemployed because of substantive deceit in connection with her work. R.C. 4141.29(D)(2)(f).
Furthermore, OBES's conclusion that Terrell's discharge was without just cause, was against the manifest weight of the evidence. The evidence was uncontroverted that Terrell, by her actions, demonstrated unreasonable disregard for the best interests of Oriana House. See Kiikka, 21 Ohio App.3d at 169. As such, her actions constituted fault. See id. An "ordinarily intelligent person" would find it justifiable to discharge an employee for such blatant deception and disregard for her employer's and coworkers' best interests. See Irvine,19 Ohio St.3d at 17. Consequently, Terrell was not entitled to unemployment compensation because she was discharged with just cause. R.C. 4141.29(D)(2)(a).
We find that the OBES Review Commission's determination that Terrell's discharge was without just cause is against the manifest weight of the evidence. We find that the trial court erred in affirming a decision that was against the manifest weight of the evidence. Oriana House's assignment of error is well taken.
We reverse the judgment of the trial court and we remand this cause for action consistent with this opinion.
Judgment reversed and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellees.
Exceptions.
 _______________________________ WILLIAM R. BAIRD
FOR THE COURT WHITMORE, P.J., BATCHELDER, J. CONCUR.
[1] On October 3, 1997, Terrell was "written up" for having arrived at work late ten times since May 14, 1997, when an action plan was established. She was also advised that she had seven unscheduled absences since May 14. Although Terrell was warned that she could be disciplined, "up to and including termination of employment" if she had further infractions, this issue was not addressed at the OBES hearing or on appeal.